REID, Judge
This is a tort suit brought by Mary Flowers, Doc Flowers and Emma Gene Jackson against the insurer of a 1953 Ford truck and trailer owned by Meir’s Rig and Construction Company. The plaintiffs are seeking damages for personal injuries: to *493 Mary Flowers and loss of property belonging to Emma Gene Jackson.
A trial on the merits was had and judgment was rendered for the defendants. From this adverse judgment the plaintiffs have perfected an appeal in forma paup-eris.
There are certain facts which are undisputed. These facts are substantially as follows:
Emma Gene Jackson was operating a 1950 Buick owned by Percy Patterson in a southerly direction along Louisiana Highway 19, just south of Ethel, Louisiana. Meanwhile, Bennie Bob, an employee of Meir’s Rig and Construction company, had parked the 1953 Ford truck and trailer, owned by his said employer in the southbound lane of the highway due to a power failure of the electrical system of the truck. When the car operated by Emma Gene Jackson was more than ninety feet distant from the stalled truck, Emma Gene Jackson became aware that the truck was stalled in her path. She drove her car off the road at a point approximately ninety feet from the rear of the stalled truck. The car she was operating went into a ditch on the side of the road and came to a stop when it hit a culvert which extended into the ditch. This point where the car stopped was near the truck. The Buick was greatly damaged. Mary Flowers, one of the plaintiffs, and Arthur James Singleton, a young boy were guest passengers in the Buick at the time of the accident.
There are several points upon which the testimony of plaintiffs’ witnesses and the testimony of the assured’s truck driver, and his helper, is in conflict.
Emma Gene Jackson, Mary Flowers and Arthur James ángleton all testified that the tail lights were visible on the truck before the accident. Emma Gene Jackson testified that she did not realize the truck was not moving until she was quite close to the truck.
Bennie Bob, the truck driver, and Joseph Chaisson, the driver’s helper or “swamper” both testified that a power failure caused the truck to stall and all of the lights on the truck to go out.
The investigating officer substantiated the version recounted by the truck driver and the swamper. They testified that the lights on the truck were barely visible when they arrived on the scene. The driver had explained that several minutes after the accident he tried to start the truck. The lights came on, but were very weak. He left the ignition on after that.
Under these circumstances it is felt that the trial court was more than justified in finding that the lights on the truck were out at the time of the accident.
The assured’s driver and swamper testified that the truck had been pulled to the side of the road. The testimony of these witnesses regarding the position of the truck at the time of the accident was not substantiated by the police officer’s findings. They found that the truck was within the southbound lane and that all of the tires were still in that lane.
The District Court found that the police officers were correct on >this point. The trial Judge’s findings of fact were made with the benefit of observing the witnesses as they testified. Accordingly, the trial court’s concise findings on these two points are adopted as our own:
(1) “Benny Bob, an employee of Meir’s Rig and Construction Company was driving a 1953 Ford truck tandem trailer in a southerly direction on Louisiana Highway No. 19 when the electrical system on the truck suddenly and without warning failed.
(2) “The driver of the truck, probably because of the sudden and complete failure of his lights did not pull off on the shoulder of the road, and as a consequence, the truck with tandem trailer which he was driving completely obstructed the southbound traffic lane.”
*494 Emma Gene Jackson and Mary Flowers testified that there was an oncoming car near the truck and blocking the northbound lane when the Buiclc was driven into the ditch.
It should be mentioned that both Bennie Bob and Joseph Chaisson deny that there was a third vehicle in the vicinity at the time of the accident. Their testimony does show, however, that a northbound truck passed the stalled vehicle shortly before the accident but that said vehicle had continued its northerly progress and had no bearing whatsoever upon the accident. It should also be noted that plaintiffs apparently failed to mention the presence of the alleged oncoming vehicle to the investigating officers.
There is much testimony regarding the failure of Bob and Chaisson to comply with LSA-R.S. 32:441 which requires the placement of flares in proximity to trucks parked upon the public highways. In view of the evidence of Bob and Chaisson which is hereinafter set forth, we believe the trial court correctly concluded Bob and Chais-son had in fact not set out flares at the time of the accident for the reason the accident occurred before they had opportunity to comply with the aforesaid provision of law.
Chaisson testified that when the truck came to a stop he immediately descended from the vehicle with a lighted electric signal lantern with which he intended to flag either approaching or oncoming traffic. Observing the lights of an oncoming or northbound vehicle he immediately walked toward the front of the parked truck and waved the lighted lantern to warn the oncoming vehicle of the presence of the stalled truck upon the highway. In this manner he slowed the speed of the -approaching vehicle which proved to be a truck. As the northbound truck passed Chaisson observed the lights of plaintiff’s southbound vehicle approaching at considerable distance from the rear of the stalled truck. Chaisson immediately walked. rapidly toward the back of the truck waving the lighted lantern to warn the southbound vehicle of the presence of the truck upon the highway. He stopped approximately 30 feet beyond the rear of the truck and continued to wave the light. Noting that the driver of the overtaking southbound vehicle evidently did not see his signal or was going to fail to heed same, he began retreating toward the truck continuing to wave the light and intending to seek refuge beneath the truck in the event the overtaking vehicle did not stop. When he thus reached a point a very short distance from the back end of the truck, plaintiff (who was then approximately 90 to 100 feet away) ran into the ditch. In this connection Chaisson’s testimony is corroborated by that of Bennie Bob who stated that when the truck stopped he (Bob) commenced looking for flares that were beneath the seat on the driver’s side while at the same time his helper, Chaisson, went toward the rear of the truck with a lighted lantern. As Bob was standing on the ground at the door on his side of the truck, attempting to remove the flares, he heard Chaisson yell, “Look out!”, and upon glancing to the rear of the truck noted the lights of plaintiffs’ vehicle and also observed Chaisson running toward the truck with the lantern in his hand. At about the same time he saw plaintiffs’ vehicle run into the ditch. Although there are certain inconsistencies between the testimony of Chaisson and Bob concerning the passing of a northbound truck before the approach of plaintiffs’ vehicle from the rear, there is absolutely no conflict in their testimony regarding the position, activity and conduct of Chaisson at the time plaintiff ran into the ditch. Their testimony in this regard undoubtedly favorably impressed the trial court and our own evaluation thereof, from a careful reading of the evidence, convinces us their testimony in this respect appears both reasonable and credible.
The record convinces us that the accident occurred solely because of the negligence of Emma Gene Jackson in failing to timely observe Chaisson’s presence upon *495 the highway and note the signal light he was displaying in an effort to alert her to the danger ahead. There appears little doubt but that when plaintiff did see Chaisson and note his warning light, she was so near she became startled and swerved her vehicle into the ditch. Had she been maintaining a proper lookout as required by law, there appears no reason why she should not have seen the light in ample time to bring her vehicle to a stop without incident.
The doctrine of res ipsa loquitur (advanced for the first time in plaintiffs’ brief upon appeal) is not applicable because (1) the nature of the accident involved is not such that knowledge of the cause thereof lies exclusively with defendant; (2) consideration of the evidence as a whole indicates defendant’s freedom from negligence; and (3) the record affirmatively establishes the sole proximate cause of the accident was the negligence of plaintiff, Emma Gene Jackson.
For the reasons assigned the judgment of the trial court is affirmed at plaintiffs’ costs.
Affirmed.